The Full Commission originally heard this matter on 14 December 1994 upon the appeals of both plaintiff and defendants from the Opinion and award of Deputy Commissioner Morgan S. Chapman, filed 2 August 1994. It was reviewed based on the record of the record of proceedings before Deputy Commission Chapman and the briefs and oral arguments before the Full Commission. The Full Commission determined that while defendant had failed to show good ground to reconsider the evidence, plaintiff had done so and, therefore, modified the Deputy Commissioner's decision. One of the modifications from the Deputy Commissioner's decision was the correcting the amount of weeks for which plaintiff was to initially receive benefits to (89) weeks.
The Full Commission now issues its final Opinion and Award in which the credit at issue is awarded through modifications in Conclusion of Law (3) and Award Paragraph (1). Otherwise, the remainder of the 2 February 1995 Opinion and Award is unchanged.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and plaintiff.
3. St. Paul Fire and Marine Insurance Company was the carrier on the risk.
In addition, the Form 22 and the medical reports attached to the Pre-Trial Order were stipulated into evidence. The Pre-Trial Order dated 13 May 1993 is incorporated herein by reference.
* * * * * * * * * * * *
The Full Commission modifies in part the findings of fact found by the Deputy Commissioner, and finds as follows:
FINDINGS OF FACT
1. As of 5 November 1990 plaintiff had been employed by defendant-employer for approximately ten years. His job at that time was piping superintendent and his average weekly wage was $1,189.99. He was working as one of the superintendents at a Plymouth paper mill job site. Defendant-employer was upgrading machinery at the mill, and pipes had to be replaced in order to accomplish the upgrade. Although the company had been working at the plant for over a year, the mill was shutdown in October and November for the renovation work to be completed. Due to the financial effect of the shutdown, additional workers were brought to the site and every effort was made to finish the job as soon as possible. Work was performed twenty-four hours a day. Plaintiff's job was to supervise the replacement of the pipes and to solve any problems which arose during his 7:00 a.m. to 7:00 p.m. shift. His supervisor placed a great deal of pressure on him to get the job done, and he worked late most days.
2. At the end of his shift on 5 November 1990, plaintiff noticed that water was leaking out of a flange. After inspecting it, he determined that either the wrong size gasket had been used or no gasket had been installed, so he and Mr. Tommy Scarborough began to work on the problem. When the time came to tighten the flange, plaintiff and Mr. Scarborough had considerable difficulty. Plaintiff, who was working on one side, used double wrenches for additional leverage while Mr. Scarborough worked on the other side. The area they had to work in was tight and there was water on the floor. As plaintiff was straining to tighten the flange, he suddenly experienced the onset of severe low back pain which radiated into his testicles and hips. When his supervisor, Mr. Harvey Brooks, came over a short time later, he reported the injury and indicated that he needed to leave. Plaintiff was visibly impaired when he left work that night.
3. Plaintiff was still in pain the next morning and was unable to report to work as scheduled, but he went in late that morning. Thereafter, he did not perform the physical work he had previously been doing but began to delegate it and just supervise. Plaintiff continued working until June 1991 thinking that the back and leg pain would resolve, but it grew worse instead. On 13 June 1991 plaintiff went to see Dr. Oak for treatment but then decided that he needed to see a specialist. He had had a long history of back problems beginning with an injury in college and had under gone four operation to his lower back. Plaintiff decided that he should return to the doctor who had performed his last surgery, so he called the medical center in Birmingham, Alabama where it had been performed. Apparently, Dr. Griff R. Harsh, III was no longer in practice and plaintiff was given an appointment with Dr. W.S. Fisher, III.
4. Dr. Fisher examined plaintiff on 28 June 1991 and ordered an MRI. There were problems with the MRI and it could not be adequately read. Dr. Fisher was concerned that plaintiff had arachnoiditis based upon what could be seen on the MRI. Since plaintiff was reluctant to undergo a myleogram, Dr. Fisher referred him to Dr. Sanford H. Vernick in Greenville for pain management. Dr. Vernick examined plaintiff on 4 September 1991 and ordered psychological evaluation and a functional capacity evaluation. Dr. Vernick subsequently released plaintiff to return to work with restrictions on 14 October 1991. On 10 November 1991 plaintiff was called and given a job in Lumberton where physical work would not be required. Plaintiff accepted the position and worked at that site until 14 December 1991 when the job was completed. He did not receive another work assignment, but apparently remained on the payroll until 31 January 1992 when he was laid off.
5. Because of his persistent symptoms, plaintiff went to Dr. Robert P. Singer, a neurosurgeon in Richmond, Virginia, on 23 March 1992 for evaluation of his condition. Dr. Singer determined that he could not adequately address the problems and referred plaintiff to Johns Hopkins Hospital. Plaintiff went there on 5 December 1992 and saw Dr. Marco Pappagallo. He still complained of low back pain and bilateral leg pain, but he had also developed neck pain and symptoms in his hands over the previous few months. Dr. Pappagallo reviewed the MRI which had been performed in July and ordered additional diagnostic tests. Since there was apparent disc herniation in plaintiff's cervical spine, he referred plaintiff to Dr. Allen Belzberg, a neurosurgeon. Dr. Belzberg began treating him on 28 October 1992 for the cervical spine problem and performed surgery at C-56 and C-57 in December 1992. Dr. Belzberg was of the opinion that the incident on 5 November 1990 could have aggravated plaintiff's pre-existing cervical spine condition.
6. Plaintiff was not treated for his lower back problems until 28 May 1993 when he was evaluated by Dr. Michael Tooke, an orthopaedic surgeon. He continued to experience persistent back pain which radiated into his groin as of that time. Dr. Tooke found evidence of spinal stenosis at T12-L1 and opined that plaintiff might benefit from surgery. However, he had not provided further treatment or follow-up care by the time his testimony was taken.
7. On 5 November 1990 plaintiff sustained an injury by accent arising out of and in the course of his employment with defendant-employer. The fact that he strained to tighten a flange while working in an awkward position constituted an unusual occurrence which interrupted his regular work routine. It was also a specific traumatic incident of the work assigned. As a result of the injury by accident of 5 November 1990, both plaintiff's low back and cervical spine conditions were materially aggravated for the worse.
8. Plaintiff reported his injury to his supervisor according to company policy. Mr. Brooks ridiculed him and ignored the problem. Plaintiff also informed Mr. Brooks in June that he was going to have to stop work in order to get medical treatment. He was not told at that time that he would have to go to any particular doctor.
9. Plaintiff did not give written notice of his injury to his employer within thirty days of its occurrence. However, he gave verbal notice to his supervisor immediately after it occurred. It was the responsibility of Mr. Brooks to make a written report of the incident, but he failed to do so. In any event, defendant-employer had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice.
10. As a result of this injury by accident, plaintiff was unable to work from 11 June 1991 through approximately 9 November 1991. During that time, he received sick leave compensation from his employer. Defendant-employer paid him his full salary until 11 September 1991 and then paid him sixty percent of his salary until about 9 November 1991. Consequently, he was paid approximately $20,139.00 during his absence. After he returned to work, he received his regular salary until approximately 31 January 1992 when he was laid off. Plaintiff continued to be unable to perform his regular work duties after that date due to back and leg pain associated with this injury, but defendants did not pay him further sick leave or other compensation for his disability. However, plaintiff received a severance pay package unrelated to his disability.
11. Plaintiff continued to be unable to work as a result of his low back condition during the time he received treatment from Dr. Belzberg. He remained unable to work as of the date of the hearing and required further medical treatment for his work related condition.
12. This appeal was brought by the insurance carrier and resulted in the ultimate award of compensation to plaintiff. However, counsel for plaintiff has not submitted any affidavit regarding hours worked on behalf of plaintiff in support of his Motion for fees pursuant to N.C.G.S. § 97-88.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission Concludes as follows:
CONCLUSIONS OF LAW
1. On 5 November 1990 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer which materially aggravated plaintiff's pre-existing low back and cervical spine conditions. Anderson v.Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951); N.C.G.S. § 97-2 (6).
2. Plaintiff's claim is not barred by his failure to give written notice of his injury to his employer within thirty days in that defendants had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice. N.C.G.S. § 97-22.
3. Plaintiff is entitled to compensation at the rate of $390.00 per week for eighty-nine weeks (89) for the temporary total disability he sustained as a result of this injury by accident up through the date of the initial hearing on 13 May 1993 and continuing thereafter for so long as he remains so disabled, subject to the below attorney's fee and credit to which defendants are entitled in the amount of $20,139.00 for sick leave benefits previously paid to plaintiff. N.C.G.S. § 97-29.
4. As the result of the 5 November 1990 injury by accident, plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lesson his disability. N.C.G.S. § 97-25.
5. Plaintiff and plaintiff's counsel have submitted insufficient documentation regarding plaintiff's Motion for Interest and counsel for plaintiff's Motion for Fees. N.C.G.S. § 97-86.2; N.C.G.S. § 97-88.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission modifies the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $390.00 per week for eighty-nine (89) weeks, for his disability through 13 May 1993, and continuing thereafter for as long as he remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This Award is subject to the attorney's fee below and credit to which defendants are entitled in the amount of $20,139.00 for sick leave benefits previously paid to plaintiff.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is approved for plaintiff's counsel. Mr. Smith shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
4. Defendants shall pay the costs including a penalty of $25.00 pursuant to N.C.G.S. § 97-92 for their failure to file a Form 19 with the Industrial Commission regarding this injury.
* * * * * * * * * * *
ORDER
For clarification, the Full Commission ORDERS that all Full Commission Orders filed after 28 March 1996 are RESCINDED.
Further, as plaintiff and plaintiff's counsel have failed to show good ground, plaintiff's Motion for Interest and counsel for plaintiff's Motion for Fees are DENIED. Should additional documentation be sent to the Commission, the Full Commission may revisit the issues raised in the above two motions.
 S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER